1

Jennifer L. Jones, SBN 284624
  jljones@proskauer.com

2

PROSKAUER ROSE LLP
2049 Century Park East, Suite 3200

3

Los Angeles, CA 90067-3206
Telephone:    310.557.2900

4

Facsimile:    310.557.2193

5

Richard M. Goldstein (*pro hac vice*)
  rgoldstein@proskauer.com

6

Baldassare Vinti (*pro hac vice*)
  bvinti@proskauer.com

7

PROSKAUER ROSE LLP
Eleven Times Square

8

New York, NY 10036
Telephone:    212.969.3000

9

Facsimile:    212.969.2900

10

*Attorneys for Defendant Church & Dwight Co., Inc.*

11

UNITED STATES DISTRICT COURT

12

NORTHERN DISTRICT OF CALIFORNIA

13

SAN FRANCISCO DIVISION

14

ERIN FINNEGAN, On Behalf of Herself and All
Others Similarly Situated

Case No.  3:17-cv-05538-RS

15

16

                     Plaintiff,

**NOTICE OF MOTION AND MOTION
TO DISMISS PLAINTIFF'S FIRST
AMENDED CLASS ACTION
COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES**

17

    vs.

18

CHURCH & DWIGHT CO., INC., a Delaware
Corporation

**Hearing**:
Date:         January 4, 2018

19

                    Defendant.

Time:         1:30 p.m.

20

Ctrm:        Courtroom 3
Judge:       Hon. Richard Seeborg

21

22

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

23

      PLEASE TAKE NOTICE that on January 4, 2018, at 1:30 p.m., or as soon thereafter as

24

may be heard before the Honorable Richard Seeborg, in Courtroom 3 of the United States

25

District Court, Northern District of California, located at 450 Golden Gate Avenue, San

26

Francisco, CA 94102, Defendant Church & Dwight Co., Inc. ("Church & Dwight") will and

27

hereby does move this Court to dismiss Plaintiff's First Amended Class Action Complaint

28

("FAC") in its entirety and with prejudice pursuant to Rule 12(b)(6).

Church & Dwight seeks to dismiss Plaintiff's FAC on the grounds that Plaintiff fails to plausibly allege that the "Hair, Skin & Nails Support" claim is false or misleading and therefore fails to state a claim upon which relief can be granted, as set forth more fully in the attached Memorandum of Points and Authorities.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in Support of the Motion, the Proposed Order filed currently herewith, the Request for Judicial Notice filed concurrently herewith, the Declaration of Jennifer L. Jones in support thereof (with exhibit), all cited authorities, all pleadings and papers on file in this action, and such oral argument and other evidence and/or argument as the Court shall consider in connection with the hearing on the Motion.

Dated:        November 27, 2017                    Respectfully Submitted,

                                                   PROSKAUER ROSE LLP


                                          By:      /s/ Jennifer L. Jones
                                                   Jennifer L. Jones
                                                   2049 Century Park East, Suite 3200
                                                   Los Angeles, CA 90067-3206
                                                   Telephone: 310.557.2900
                                                   Facsimile:  310.557.2193
                                                   jljones@proskauer.com

                                                   Richard M. Goldstein*
                                                   Baldassare Vinti*
                                                   Eleven Times Square
                                                   New York, NY 10036
                                                   Telephone:    212.969.3000
                                                   Facsimile:    212.969.2900
                                                   rgoldstein@proskauer.com
                                                   bvinti@proskauer.com
                                                   *admitted *pro hac vice*

                                                   *Attorneys for Defendant Church & Dwight Co., Inc.*

1

**TABLE OF CONTENTS**

2   I.     INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

3   II.    STATEMENT OF ISSUE ........................................................................................ 3

4   III.   FACTUAL BACKGROUND ..................................................................................... 4

5   IV.    ARGUMENT .......................................................................................................... 6

6          A.     The FAC Fails To Plausibly Allege That The Biotin Supplement Label Is
7                 False or Misleading ........................................................................................ 6

8                 1.     Because Plaintiff's UCL And CLRA Claims Are Premised On
                          Factual Allegations On Matters Of Biochemistry, The Ninth
9                         Circuit's Recent *SanMedica* Decision Requires That They Be
                          Plausibly Supported By Scientific Literature Or Testing .......................... 6
10
                  2.     The IOM Report Does Not Support That The Human Body "Only
11                        Requires A Finite Amount Of Biotin." ...................................................... 8

12                3.     The IOM Report Does Not Support That The "General Population"
                          Consumes "Sufficient, If Not Excessive Amounts Of Biotin From
13                        Their Daily Diets." ................................................................................ 9

14                4.     The IOM Report Does Not Support That Biotin Intake Above The
15                        AI Is "Superfluous." ............................................................................. 11

16                5.     The FAC Should Be Dismissed As It Contains No Factual Basis
17                        For Its Assertions. ................................................................................ 12

18                6.     Dismissal of Plaintiff's UCL and CLRA Claims Should Be With
                          Prejudice. ............................................................................................. 15

19  V.     CONCLUSION .................................................................................................... 15

20

21

22

23

24

25

26

27

28

CHURCH & DWIGHT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT – Case No. 3:17-cv-05538-RS

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alamilla v. Hain Celestial Group*,
30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) ...............................................................2, 12, 13

*Aloudi v. Intramedic Research Group*,
2015 WL 4148381 (N.D. Cal. July 9, 2015)........................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................1, 6, 8

*Bell. Atl. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................8, 12

*Davis v. HSBC Bank Nevada*,
691 F.3d 1152 (9th Cir. 2012) .......................................................................................2, 3, 7

*Eckler v. Wal-Mart Stores*,
2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ......................................................................14

*Eclectic Props. E. v. Marcus & Millichap*,
751 F.3d 990 (9th Cir. 2014) ...............................................................................................6

*Engel v. Novex Biotech LLC*,
2015 WL 846777 (N.D. Cal. Feb. 25, 2015), *aff'd*, 689 F. App'x 510 (9th Cir.
2017) .....................................................................................................................................12

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014) .............................................................................................15

*Greenberg v. Target*,
No. 3:17-cv-01862-RS (N.D. Cal. Aug. 28, 2017), ECF 33.................................................3

*Kardovich v. Pfizer*,
97 F. Supp. 3d 131 (E.D.N.Y. 2015) ..................................................................................14

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017) ....................................................................................... passim

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008) ...............................................................................................12

*McCrary v. Elations*,
2013 WL 6402217 (C.D. Cal. Apr. 24, 2013) ....................................................................14

ii

*Mujica v. AirScan*,
    771 F.3d 580 (9th Cir. 2014) ................................................................................................15

*Tubbs v. AdvoCare Int'l*,
    2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) ......................................................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) ............................................................................................................ passim

MEMORANDUM OF POINTS AND AUTHORITIES

I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Erin Finnegan contends that the statement "Hair, Skin & Nails Support" on the label of Defendant Church & Dwight's Vitafusion EXTRA STRENGTH Biotin 5000 mcg Gummies vitamin supplement (the "Biotin Supplement") violates California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA"). Even if this innocuous statement is interpreted to represent that the Biotin Supplement will help any user to have healthier hair, skin and nails -- an interpretation Plaintiff's First Amended Class Action Complaint ("FAC") does not even set forth -- the FAC still fails to set forth facts plausibly supporting a violation of either statute, and therefore must be dismissed.

Biotin is a B vitamin that, according to Plaintiff, is found in various foods as well as in vitamin supplements such as Church & Dwight's. FAC ¶¶ 1, 2. The FAC acknowledges that Biotin acts to help various enzymes perform their biochemical functions and that in doing so, is capable of improving hair, skin and nail health. *Id.* ¶¶ 2, 7. Plaintiff's contention that the "Hair, Skin & Nails Support" statement nonetheless is false or misleading rests on three assertions of purported scientific fact.

First, she alleges that Biotin is not a "more is better" substance, because the "body only needs a finite amount of biotin on a daily basis to perform these functions." *Id.* ¶ 5. Second, she contends that, "with the exception of [those suffering from] two exceedingly rare conditions," the "general population" (whatever that term is supposed to mean) obtains the necessary amount of Biotin from their "daily diets." Third, she asserts that the consumption of Biotin in amounts greater than contained in the daily diet of a healthy person in the "general population" provides no added benefit to hair, skin and nail health and therefore Church & Dwight's Biotin Supplement is "functionally superfluous" and "unneeded." *Id.* ¶¶ 5, 6.

Plaintiff's theory of liability is clear enough, but clarity is not the test for compliance with Fed. R. Civ. P. 8(a). Instead, to avoid dismissal under Rule 8(a), the FAC must assert non-conclusory facts that *plausibly* demonstrate a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell. Atl. v. Twombly*, 550 U.S. 544, 570 (2007). The FAC fails that test.

CHURCH & DWIGHT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT – Case No. 3:17-cv-05538-RS

Case 3:17-cv-05538-RS   Document 28   Filed 11/27/17   Page 7 of 21

Each of Plaintiff's three core contentions concerns matters of biochemistry relating to Biotin's function and effect.  Plaintiff does not claim to be a biochemist, scientific researcher or medical professional, nor to have any other Biotin expertise.  Thus, her three core contentions can meet the *Iqbal/Twombly* plausibility test only if they are supported by references to scientific testing or literature or anecdotal evidence.  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1091 (9th Cir. 2017).  Moreover, it is not enough for the FAC merely to cite a scientific source -- the source actually must say what the FAC alleges it says.  Where a complaint's allegations are not supported, or are affirmatively contradicted, by a cited source, the complaint must be dismissed.  *See, e.g.*, *id.*; *Alamilla v. Hain Celestial Group*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014).

The FAC makes no reference to scientific tests or anecdotal evidence, but it does refer to, and quotes snippets of, a chapter about Biotin in a report by the Institute of Medicine, a branch of the National Academies of Sciences, Engineering and Medicine (the "IOM Report").  Exhibit 1 to the Declaration of Jennifer L. Jones in Support of Church & Dwight's Request for Judicial Notice.  Because Plaintiff relies on the IOM Report in the FAC, the Report is deemed incorporated by reference in the FAC, even though Plaintiff did not attach it.  *Davis v. HSBC Bank Nevada,* 691 F.3d 1152, 1160 (9th Cir. 2012).

Critically, the IOM Report does not plausibly support, and in fact contradicts, the FAC's three core allegations.  First, the IOM Report neither states nor implies that only a finite amount of Biotin is needed to perform the various functions that Biotin biochemically supports.  To the contrary, the IOM Report acknowledges that "[e]vidence concerning the biotin requirement is minimal and does not justify the setting of an Estimated Average Requirement" for Biotin intake.  IOM Report at 381.  Nor does the IOM Report state that the amount of Biotin intake from a person's daily diet provides all the benefits a person needs.  In fact, the Report notes repeatedly that there is no standard intake of Biotin in a person's diet, let alone in what the FAC refers to as the diet of the "general U.S. population."  Thus, the very first paragraph of the Report states unequivocally that "[t]here are no nationally representative estimates of the intake of biotin from food or from both food and supplements."  The Report further emphasizes this point, noting that

2

CHURCH & DWIGHT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT – Case No. 3:17-cv-05538-RS

"[t]here is a serious lack of data useful for setting Estimated Average Requirements for biotin," and that "the understanding of the nutrition of biotin is rudimentary compared with that of some other B vitamins." *Id*. at 374, 385. Finally, there is not a sentence in the IOM Report that either states or implies that healthy persons cannot derive any benefits from Biotin supplements, or that such supplements cannot provide any benefit to hair, skin or nail health. In short, the IOM Report does not plausibly support any of the FAC's three core contentions, let alone all of them.

Church & Dwight is aware that in *Greenberg v. Target,* No. 3:17-cv-01862-RS (N.D. Cal. Aug. 28, 2017), ECF 33 ("*Greenberg* MTD Op."), this Court denied the defendant's motion to dismiss a complaint very similar to the one at bar. In *Greenberg*, however, the defendant's main argument was that the complaint was defective because it only alleged that defendant's label statements were unsubstantiated, not affirmatively false or misleading. This Court rejected that argument, finding that the plaintiff had alleged that defendant's label was false and misleading. *Greenberg* MTD Op. at 4–5.

Unlike the defendant in *Greenberg*, Church & Dwight does not argue in this motion that the FAC only alleges that the "Hair, Skin and Nails Support" statement lacks substantiation. Instead, Church & Dwight argues that Plaintiff's core allegations of falsity are contradicted or unsupported by the IOM Report, and therefore, the FAC does not satisfy Rule 8(a)'s plausibility requirement. Due to how the defendant in *Greenberg* framed its motion to dismiss, this Court was only called upon to assess how plaintiff characterized the IOM Report, not whether plaintiff's characterization was accurate. In this motion, however, the contents of the IOM Report are crucial. Because that Report does not in fact reach the conclusions the Plaintiff attributes to it, the Report does not plausibly support the FAC's core allegations. Therefore, the FAC must be dismissed, notwithstanding the outcome of the motion in *Greenberg*.

II.    **STATEMENT OF ISSUE**

1.    Do Plaintiff's claims of a false or misleading statement in violation of the UCL and CLRA fail to comply with Fed. R. Civ. P. 8(a)'s plausibility requirement where the scientific

CHURCH & DWIGHT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT – Case No. 3:17-cv-05538-RS

paper on which the FAC relies does not support, and in some instances contradicts, the central

allegations on which Plaintiff's theory of liability are founded?

### III.     FACTUAL BACKGROUND

Except where otherwise indicated, the facts set forth in this Section are those alleged in

the FAC.  Biotin is a type of B vitamin that helps the body complete metabolic reactions

involved in the processing of fats, carbohydrates and amino acids.  FAC ¶ 2.  Church & Dwight

makes, sells and distributes the Biotin Supplement.  *Id.* ¶ 1 & Ex. A.  The Biotin Supplement

label contains the statement "Hair, Skin & Nails Support."  *See* FAC Ex. A at 2; *id*. ¶ 1.

Plaintiff Finnegan claims to be a resident of San Mateo; she alleges that she "was

exposed to, saw and relied upon" the "Hair, Skin & Nails Support" statement on Church &

Dwight's Biotin Supplement on or around August 31, 2017; and that she purchased a bottle of

the Biotin Supplement (either on August 31, 2017 or on a different day) at a Target in San

Francisco, California "in reliance on" the "Hair, Skin & Nails Support" statement, paying

"approximately $14" for the Biotin Supplement.  FAC ¶ 15.

The FAC acknowledges that Biotin helps five enzymes perform their biochemical

functions.  *Id.* ¶ 5.  The FAC also acknowledges that there is no scientific testing contradicting

Church & Dwight's "Hair, Skin & Nails Support" claim, and that at least in some circumstances,

testing specifically supports that claim.  *See id.* ¶¶ 7-8.  Nonetheless, the FAC asserts that the

Biotin Supplement Plaintiff purchased "did not and could not provide the . . . health benefits"

represented by the "Hair, Skin & Nails Support" statement (*id.* ¶ 15), because the body

"requires" only a "finite amount" of Biotin on a daily basis (*id.* ¶¶ 3, 5); the "general population

. . . consumes sufficient, if not excessive, amounts of biotin from their daily diets" (*id.* ¶ 6); and

"once one consumes a sufficient amount of biotin," the "remainder becomes functionally

superfluous and does not convey any additional health benefits."  *Id.* ¶ 5.

Plaintiff does not allege she is a biochemist, scientific researcher, medical professional or

otherwise is in a position to know what Biotin does and does not do, how much Biotin is

contained in the foods she and others eat as part of their daily diet, how long Biotin lasts in

CHURCH & DWIGHT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT – Case No. 3:17-cv-05538-RS

people's systems, how much Biotin she or other consumers need, or whether or not she or other consumers can benefit by taking the Biotin Supplement.  Accordingly, the FAC's allegations rest solely on the IOM Report.

The IOM Report repeatedly emphasizes that there is no standard intake of Biotin in the diet of the "general U.S. population," contrary to Plaintiff's allegation (FAC ¶ 3) that "sufficient biotin is derived from the daily diets of the general U.S. population."  Notably, the IOM Report begins by acknowledging that there are "no nationally representative estimates of the intake of biotin from food or from both food and supplements."  IOM Report at 374.  Later, the Report notes that there "is a serious lack of data useful for setting Estimated Average Requirements for biotin," and that evidence "concerning the biotin requirement is minimal and does not justify the setting of an Estimated Average Requirement" of Biotin intake.  *Id.* at 381, 385.  Finally, the Report concludes that due to the "limited information" currently available about Biotin, further research is needed for the "human requirements, intake, bioavailability, toxicity and metabolic effects" of Biotin.  *Id.* at 385-86.

The IOM Report also recognizes that with regard to dietary intake of Biotin, there are at least two factors at play: (i) how much Biotin is in the food a person consumes, and (ii) how much of the Biotin in food is "bioavailable" -- in other words, capable of being absorbed into the body and having an active effect.  As to the second of these factors, the Report acknowledges that "little is known about factors that affect bioavailability" of Biotin.  *Id.* at 375.  As to the first factor, the Report acknowledges that "Biotin contents have been determined for relatively few foods and are not ordinarily included in food composition tables."  *Id.* at 384.  And, while the Report notes that Biotin is found in meat, fruits and cereals, the Report states that Biotin in cereals "appears to be less bioavailable" (*id.* at 375), and that the concentration of Biotin in fruits and most meats is only 1 microgram (symbolized by mcg or μg) per 100 grams.  *Id.* at 375, 384. 100 grams is approximately 4 ounces.

The IOM Report surmises on the basis of admittedly "limited information" that for healthy people who are not pregnant, "there is little cause for concern about the *adequacy* of

biotin intake" in terms of avoiding Biotin "*deficiency*."  *Id*. at 385-86; *see id*. at 382-83 (emphasis added).  But the Report does not say or imply that no added benefit can be gained from the intake of Biotin in amounts greater than whatever unknown amount is needed to avoid Biotin deficiency.  Similarly, nothing in the IOM Report states or suggests that the body can obtain maximum benefit from only a "finite" amount of Biotin contained in food, or that the intake of Biotin supplements -- let alone the intake of Church & Dwight's Biotin Supplement -- is functionally superfluous, as Plaintiff contends.

## IV.    ARGUMENT

### A.    The FAC Fails To Plausibly Allege That The Biotin Supplement Label Is False or Misleading

The FAC can pass muster under Rule 8(a) only if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that that the defendant is liable for the misconduct alleged."  *Id*.  "'[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'"  *Id*.  Only after the complaint has been "[t]rimmed of 'legal conclusions' and 'threadbare recitals of a cause of action'" does the court determine whether it "contains sufficient factual allegations to state a plausible entitlement to relief."  *Eclectic Props. E. v. Marcus & Millichap*, 751 F.3d 990, 998 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).  A complaint also does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, as discussed below, a pleading that relies on a scientific paper that does not, in fact, plausibly support the allegations for which the paper was cited also fails the *Iqbal/Twombly* plausibility test.  For these reasons, Plaintiff has failed to meet her Rule 8(a) pleading burden.

#### 1.    Because Plaintiff's UCL And CLRA Claims Are Premised On Factual Allegations On Matters Of Biochemistry, the Ninth Circuit's Recent

CHURCH & DWIGHT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT – Case No. 3:17-cv-05538-RS

### *SanMedica* Decision Requires That They Be Plausibly Supported By Scientific Literature Or Testing

As previously noted, the FAC does not allege that Plaintiff has any scientific background or expertise. *See* p. 4–5, *supra*. Yet, the FAC's contention that the Biotin Supplement's "Hair, Skin & Nails Support" statement is false or misleading in violation of the UCL and CLRA rests on the following core allegations of scientific fact:

- The "human body only requires a finite amount of biotin." FAC ¶ 3.
- The "general population" (with certain "exceedingly rare" exceptions) "consumes sufficient, if not excessive, amounts of Biotin from their daily diets." *Id.* ¶ 6.
- Once a certain threshold of Biotin has been consumed, further Biotin supplementation is "functionally superfluous and does not convey any additional health benefits." *Id.* ¶ 5.

A recent Ninth Circuit decision, *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1091 (9th Cir. 2017), confirms that for these allegations to pass muster at the motion to dismiss stage, they must be plausibly supported either by scientific testing, scientific literature or anecdotal experience. Because each of Plaintiff's three core allegations is necessary to Plaintiff's contention that the "Hair, Skin & Nails Support" claim is false or misleading, Plaintiff will have failed to plausibly allege a claim for relief if any one of the three is unsupported. The FAC does not allege that any of the three core allegations is supported by scientific testing, nor does it (nor can it) plead any anecdotal evidence concerning these complex issues of biochemistry. The FAC does, however, cite to a piece of scientific literature, the IOM Report, which is deemed incorporated by reference in the FAC.[1] If the IOM Report can be read as providing plausible support for the above three core allegations, then Plaintiff's UCL and CLRA claims that the Biotin Supplement

---

[1] *Davis, supra,* 691 F.3d at 1160 ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading" are properly incorporated by reference, and a court may "treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)" (citations and internal quotation marks omitted)). *See also* Church & Dwight's Request for Judicial Notice (filed concurrently with this Motion).

CHURCH & DWIGHT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT – Case No. 3:17-cv-05538-RS

does not convey any benefit to consumers would satisfy Rule 8(a).  In fact, however, none of those core allegations is supported by the IOM Report.

## 2.   The IOM Report Does Not Support That The Human Body "Only Requires A Finite Amount Of Biotin"

The FAC alleges that "[t]he human body only requires a finite amount of biotin on a daily basis for it to perform its enzymatic functions as there are a finite number of enzymes that use biotin.  Once there is sufficient biotin in the body, saturation occurs and the body just does not use this surplus biotin."  FAC ¶ 3.  FAC Paragraph 3 does not cite to any scientific support for this allegation.  If this is simply Plaintiff's lay conclusion, then this allegation is to be disregarded under *Iqbal, Twombly* and *SanMedica*, as discussed above.  If, on the other hand, Plaintiff views the IOM Report as support for this allegation, then Plaintiff is wrong: there is no reference anywhere in the Report to there being only a finite amount of Biotin that a person can use, or to any saturation point for enzymes that use Biotin.

Referencing the IOM Report, the FAC states that "[t]he Institute of Medicine has set an adequate intake (AI) for biotin at 30 micrograms (mcg) per day for people 19 years." *Id*. However, as the IOM Report makes clear, the AI, besides being based on what the Report recognizes as "minimal" information (IOM Report at 381), is at most a *floor* on Biotin consumption to avoid Biotin deficiency symptoms, not a "saturation" point above which additional Biotin consumption provides no benefits.  *See id*. at 382 ("In the absence of data on biotin deficiencies in normal individuals, a reasonable inference would be that the average current dietary intake of biotin should meet the dietary requirement").[2]  The Report further stresses that in its discussion of what amount of Biotin intake is adequate versus inadequate, it is not estimating what the average Biotin intake requirement should be.  *Id*. at 381, 385 ("Evidence concerning the biotin requirement is minimal and does not justify the setting of an Estimated

---

[2]      The AI for Biotin is itself an estimate: it does not reflect direct measurements but rather is "extrapolated from the data for infants and limited estimates of intake" due to limited data on adult requirements.  IOM Report at 374.

1   Average Requirement"; "There is a serious lack of data useful for setting Estimated Average

2   Requirements" for Biotin).  The Report further calls for "needed" research on virtually every

3   aspect of "the human requirements" of Biotin, including regarding Biotin "intake, bioavailability,

4   toxicity, and metabolic effects."  *Id.* at 386.

5        Plaintiff's attempt to treat the AI as the ceiling for the body's need for Biotin is simply

6   not a plausible reading of the IOM Report in light of, among other things, (i) the Report's clear

7   treatment of the AI as the minimal amount the human body needs to avoid Biotin deficiency, not

8   the maximum amount of Biotin a person can benefit from, and (ii) the Report's repeated

9   references to the "serious lack of data" concerning the amount of Biotin in foods, the body's

10  ability to process Biotin from food sources and the extent of "human requirements" for Biotin.[3]

11  Indeed, Plaintiff's argument is analogous to saying that because the recommended amount of

12  sleep for healthy adults is seven hours, the amount of sleep needed by the body is finite and any

13  sleep above seven hours is superfluous.  Obviously, the minimum recommended amount of

14  sleep, just like the minimum amount of Biotin needed by the body, is not equal to a threshold

15  above which sleep, or in this case Biotin, becomes superfluous.

16     **3.   The IOM Report Does Not Support That The "General Population"**

17     **Consumes "Sufficient, If Not Excessive Amounts Of Biotin From Their Daily**

18     **Diets"**

19        The IOM Report also provides no support for the next key assertion for Plaintiff's

20  argument: that the general population "consumes sufficient, if not excessive, amounts of biotin

21  from their daily diets."  FAC ¶ 6.  Plaintiff makes this assertion without citation to any testing,

22  scientific literature or anecdotal evidence; it appears to be based on a comparison by Plaintiff or

23

24  [3]      The FAC is replete with other unsupported mischaracterizations.  For example, the FAC
    alleges that only people with "exceedingly rare" conditions or who "chronically ingest inordinate
25  amounts of raw egg whites" can suffer from Biotin deficiencies.  FAC ¶ 4.  However, the IOM
    Report identifies as factors potentially affecting the amount of Biotin required not just "rare"
26  conditions, but also pregnancy, an exceedingly common occurrence, as well as other relatively
    common medical conditions, such as kidney conditions requiring dialysis or other treatment, and
27  conditions requiring the use of anticonvulsants.  IOM Report at 380, 383.  These conditions are
    hardly "exceedingly rare."  FAC ¶ 4.
28

CHURCH & DWIGHT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT – Case No. 3:17-cv-05538-RS

her counsel of average Biotin intake estimates referenced in the IOM Report with the 30 mcg AI for Biotin set by the Report.  *See* FAC ¶ 3 (stating that the general U.S. population gets more than sufficient biotin from their daily diets "as healthy persons ingest anywhere from 30 mcg – 60 mcg of biotin from their daily diets"); *see also* ¶ 4 (same, because "average biotin intake among North American adults is anywhere from 35-70 mcg per day").

Once again, Plaintiff misapprehends the meaning of the 30 mcg AI referenced in the IOM Report.  As noted above, the Report makes clear that the AI is an assumption of the amount of Biotin sufficient to avoid symptoms of a deficiency, not an intake cap above which Biotin provides zero benefit.  Moreover, with regard to how much Biotin people actually get from their diet, the IOM Report could not be clearer that its authors do not know the answer to that question, given the paucity of research on the subject.

Thus, the first paragraph of the IOM Report states, "There are no nationally representative estimates of the intake of biotin from food or from both food and supplements." IOM Report at 374.  In addition, the Report states that "little is known about factors that affect" the bioavailability of Biotin in food, although Biotin appears to be available in fruits, meats and cereals.  *Id.* at 375, 384.[4]  The Report therefore cannot support any assertion as to whether the "general population" receives a sufficient dose of Biotin on a daily basis from food sources for at least two reasons: (i) the level of uncertainty as to the amount of Biotin *in* foods and the extent to which the human body is capable of making use of the Biotin in those foods, and (ii) the fact that the Report expressly disclaims any representation about how much Biotin intake is "sufficient" for the general population.  *See id.* at 381 ("Evidence concerning the biotin requirement is minimal and does not justify the setting of an Estimated Average Requirement").  In short, in alleging that the "general population" receives "sufficient" Biotin from their "daily diets,"

---

[4]      What little data is available, according to the IOM Report, suggests that fruits and most meats contain only about 1 mcg of biotin per 100 grams.  Report at 384.  This means that even to reach the AI level of 30 mcg (in order not to be Biotin-deficient), one would have to consume approximately 6.6 pounds of fruit or meat, as 3000 grams (or 3 kilograms) of fruit or meat would be required to get to 30 mcg of Biotin and 3 kilograms is equivalent to 6.6 pounds.

10

CHURCH & DWIGHT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT – Case No. 3:17-cv-05538-RS

Plaintiff again fails to cite any testing, scientific literature or anecdotal evidence plausibly supporting her assertion, as she is required to do under *SanMedica*.

**4.   The IOM Report Does Not Support That Biotin Intake Above The AI Is "Superfluous"**

Most importantly, the Report does not support in the slightest Plaintiff's contention that Biotin intake above the AI is "functionally superfluous."  Although the Report does state that there is "little cause for concern about the *adequacy* of biotin intake for healthy people" (FAC ¶ 8 (quoting the Report in part) (emphasis added), it is not plausible to assume -- indeed it is a non-sequitur -- that because intake of Biotin from a normal diet may be assumed sufficient to avoid a Biotin deficiency, no additional amounts of Biotin taken in the form of supplements can provide benefits such as "Hair, Skin & Nails Support."  Conceptually, this assertion is like saying that because the American Heart Association recommends "at least 150 minutes per week of moderate exercise or 75 minutes per week of vigorous exercise (or a combination of moderate and vigorous activity)" to improve overall cardiovascular health,[5] any exercise beyond 150 minutes is simply "surplus" that provides no further cardiovascular benefit.  The Report certainly does not articulate any reason to believe that Biotin supplements are pure "surplus" without any benefit.

To the contrary, the Report recognizes that a significant percentage of the population takes Biotin supplements (IOM Report at 384) and that Biotin deficiencies are correlated to hair loss and skin conditions (*id*. at 377); yet at no point does the Report state or imply that these supplements are incapable of providing the support to hair, skin and nails advertised by Church & Dwight, or any other consumer benefit.  The point is not that the IOM Report is an endorsement of Biotin supplements, but rather that the Report clearly neither states nor implies,

---

[5]    American Heart Association, American Heart Association Recommendations for Physical Activity in Adults, *available at* http://www.heart.org/HEARTORG/HealthyLiving/PhysicalActivity/FitnessBasics/American-Heart-Association-Recommendations-for-Physical-Activity-in-Adults_UCM_307976_Article.jsp#.

CHURCH & DWIGHT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT – Case No. 3:17-cv-05538-RS

as Plaintiff alleges, that the body can only make use of the Biotin it takes in from food, and that any additional Biotin taken in the form of supplements is of no benefit.

5.   **The FAC Should Be Dismissed As It Contains No Factual Basis For Its Assertions**

Due to the lack of factual support for Plaintiff's claims, the FAC should be dismissed. *See SanMedica Int'l*, 854 F.3d at 1097*; Engel v. Novex Biotech LLC*, 2015 WL 846777, at *4 (N.D. Cal. Feb. 25, 2015), *aff'd*, 689 F. App'x 510 (9th Cir. 2017) (dismissing complaint because it "cites no study that disproves Defendants' claims" and does not allege that "a study exists showing that these benefits are categorically impossible to achieve, or that one or more authorities studied or tested [Defendant's] formula and found that it does not produce the results Defendants claim").

Courts "need not accept as true allegations contradicting documents that are referenced in the complaint."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  This basic principle should govern here.  Plaintiff's core assertions are contradicted, or at least not supported, by the IOM Report, which is the only authority Plaintiff cites for her allegations. Plaintiff's FAC should therefore be dismissed, as it does not plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that Church & Dwight's "Hair, Skin & Nails Support" claim is false or misleading.  *Twombly*, 550 U.S. at 556.

Courts have dismissed complaints in similar situations, where the complaints incorporate material that does not support the core allegations of the complaint.  The decision in *Alamilla v. Hain Celestial Group* is instructive.  *See* 30 F. Supp. 3d at 944.  In that case, plaintiffs alleged that defendants' juice products were misleadingly labeled and advertised with statements that the juices were "Unpasteurized" and that juices should never be "cooked," a synonym for pasteurized, because pasteurizing deprives the juice of nutritional value.  *Id.*  The complaint acknowledged that defendant's products were not pasteurized, but claimed that defendant's statements were nonetheless misleading, because the defendant's alternative method of food

CHURCH & DWIGHT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT – Case No. 3:17-cv-05538-RS

1    safety -- pressurization -- had a similar deleterious effect on nutritional value as pasteurization.

2    For this latter and crucial allegation, plaintiff relied on two scientific articles.  *Id.*

3            The court opined that if the articles supported plaintiffs' allegations, the complaint would

4    state a plausible claim for relief.  The court found, however, that the two articles (like the IOM

5    Report here), flew in the face of the "allegation upon which [the *Alamilla* plaintiffs'] entire

6    complaint hinges -- namely, that the pressure treatment deprives juice of nutritional value to a

7    similar degree as pasteurization."  *Id.*  The complaint was therefore dismissed with prejudice.

8            Similarly, the Report does not support any of the core assertions of Plaintiff's FAC.  It

9    does not support the assertion that the human body only benefits from a "a finite amount of

10   biotin," or the allegation that the "general population" gets all the Biotin it needs from their daily

11   diets, or that Biotin intake from Church & Dwight's Biotin Supplement, or from supplements

12   generally, is "functionally superfluous" in terms of hair, skin and nails support.  Therefore, just

13   as in *Alamilla*, Plaintiff's claims should be dismissed.

14           *Tubbs v. AdvoCare Int'l*, 2017 WL 4022397, at *6 (C.D. Cal. Sept. 12, 2017) is also

15   similar.  There too, the plaintiffs' attempts to demonstrate the falsity of the defendant's

16   representations regarding its 24-Day Challenge energy drink products were insufficient.  The

17   *Tubbs* plaintiffs cited to three articles in support of their claims, but the articles suggested, at

18   most, that there was a "lack of evidence to substantiate claims that components of [energy

19   drinks], other than caffeine, contribute to the enhancement of physical or cognitive performance"

20   or that "proof [was] scant" regarding the efficacy of energy drinks generally.  *Id.*  Further, the

21   court noted, none of the articles mentioned the defendant or its specific products at issue, where

22   "[c]ourts ha[d] previously found a reliance on studies that did not involve the products at issue to

23   be insufficient."  *Id.*

24           Similarly, the IOM Report suggests at most that there is little cause for "concern about

25   the *adequacy*" of baseline Biotin intake for healthy individuals, and that further research on "the

26   human requirements" of Biotin is needed.  Report at 386 (emphasis added).  But it is completely

27   silent as to Plaintiff's claims that Biotin benefits to hair, skin and nails cease so long as people

28

13

obtain at least 30 mcg of Biotin through their diet, and that people cannot use or benefit from Biotin "surplus" to that amount. Nor does the Report say anything about Plaintiff's specific claim here, namely that Church & Dwight's Biotin Supplement cannot provide "Hair, Skin & Nails Support." Just as the articles the *Tubbs* plaintiffs cited did not provide the "requisite demonstration of falsity" in that case, the IOM Report does not purport to show that Church & Dwight's "Hair, Skin & Nails Support" claim is false or misleading. As the IOM Report is the only "testing, scientific literature, or anecdotal evidence" cited in support Plaintiff's claims, this compels the dismissal of the FAC.

In other cases where there was a "mismatch" between authority cited in a complaint (here, the Report), and the challenged statement (here, the "Hair, Skin & Nails Support" claim) such that the authority did not directly support that the specific statement at issue was false or misleading, courts have routinely dismissed the complaints. *See, e.g.*, *Aloudi v. Intramedic Research Group,* 2015 WL 4148381, at *5 (N.D. Cal. July 9, 2015) (dismissing claims because the citation of "general statements . . . devoid of context" that were "not tied to the Product or Defendant's specific representations about the Product lack[ed] a sufficient nexus with the Product representations at issue . . . and therefore [were] not sufficient to state a claim that such representations are false"); *Eckler v. Wal-Mart Stores,* 2012 WL 5382218, at *7 (S.D. Cal. Nov. 1, 2012) (dismissing claims because studies cited by plaintiff did not lend "facial plausibility" to her claims as they did not "address the . . . claim . . . made by the [Defendant's] representations" and instead related only to the general biochemical compound's effects on the symptoms of a particular disease); *McCrary v. Elations,* 2013 WL 6402217, at *3 (C.D. Cal. Apr. 24, 2013) (same); *see also Kardovich v. Pfizer,* 97 F. Supp. 3d 131, 140-41 (E.D.N.Y. 2015) (dismissing false advertising claims relating to representations on Centrum multivitamins because there was a "fundamental mismatch" between those representations and scientific materials presented by plaintiffs, and "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true").

CHURCH & DWIGHT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT – Case No. 3:17-cv-05538-RS

The same result that courts reached in all of these cases should be reached here, as the Report facially forecloses the possibility that affirmative evidence contradicting that Church & Dwight's Biotin Supplement provides "Hair, Skin & Nails Support" exists.  Rather than supporting Plaintiff's core assertions that the human body requires a "finite amount of biotin," FAC ¶ 3; that the general population "consumes sufficient, if not excessive, amounts of biotin from their daily diet," *id.* ¶ 6; and that once a certain threshold of Biotin has been consumed, further Biotin supplementation is "functionally superfluous and does not convey any additional health benefits," *id*. ¶ 5, the Report undermines or is silent as to each.  Because depriving Plaintiff of these core assertions leaves her with no factual or plausible basis for her assertion that Church & Dwight's "Hair, Skin & Nails Support" claim is false or misleading, Plaintiff has failed to meet her burden under Rule 8(a) and her claims must be dismissed.

### 6.  Dismissal of Plaintiff's UCL and CLRA Claims Should Be With Prejudice

There is nothing in the FAC to suggest that Plaintiff is aware of any testing, scientific literature or anecdotal evidence specifically relating to Church & Dwight's Biotin Supplement that would support her claims in this action.  Certainly, Plaintiff is not permitted to argue that she needs discovery to locate such evidence.  *See Mujica v. AirScan*, 771 F.3d 580, 593 (9th Cir. 2014) (Plaintiff must satisfy pleading requirements "*before* the discovery stage, not after it.") (emphasis in original).  Thus, Plaintiff should be denied leave to file a second amended complaint, as her allegations are compellingly undermined by the IOM Report.  *See Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115-16 (9th Cir. 2014).  In *Gonzales*, documents incorporated into the complaint "facially undercut" the plaintiff's key allegations.  The same is true here, and as in *Gonzales*, further amendment of the complaint would therefore be futile.  *Id.*

### V.    CONCLUSION

Because the FAC fails to plausibly allege claims under the UCL and the CLRA, the FAC should be dismissed with prejudice and without leave to replead.

Dated:            November 27, 2017            Respectfully Submitted,

PROSKAUER ROSE LLP


By:   /s/ Jennifer L. Jones
      Jennifer L. Jones
      2049 Century Park East, Suite 3200
      Los Angeles, CA 90067-3206
      Telephone: 310.557.2900
      Facsimile:  310.557.2193
      jljones@proskauer.com

      Richard M. Goldstein*
      Baldassare Vinti*
      Eleven Times Square
      New York, NY 10036
      Telephone:    212.969.3000
      Facsimile:    212.969.2900
      rgoldstein@proskauer.com
      bvinti@proskauer.com
      *admitted *pro hac vice*

      *Attorneys for Defendant Church & Dwight
      Co., Inc.*

CHURCH & DWIGHT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT – Case No. 3:17-cv-05538-RS